UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00080-MOC

| | |
|---|---|
| **KENDRA E. BIDDELL,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **ORDER** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#9) and Defendant's Motion for Summary Judgment (#17). The matter has been fully briefed and is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.   Administrative History**

Plaintiff filed an application for supplemental security income benefits on April 29, 2013, alleging disability beginning April 21, 2013 (Tr. 20, 115, 133). Her claim was denied at the initial and reconsideration levels of review. (Tr. 134, 141). At Plaintiff's request, an administrative law judge (ALJ) held a hearing on August 6, 2014, at which Plaintiff was represented by an attorney. (Tr. 152, 42, 44). On September 3, 2014, ALJ Kevin Foley issued a decision finding Plaintiff not disabled. (Tr. 17-36). The Appeals Council denied Plaintiff's Request for Review on February 11, 2015, (Tr. 1-3), rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted her available

administrative remedies, and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for

> the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV.     Substantial Evidence

### A.     Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is not.

### B.     Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

> a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;
>
> b. An individual who does not have a "severe impairment" will not be found to be disabled;
>
> c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
>
> d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

> e.   If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

### C.    The Administrative Decision

With an alleged onset date of April 21, 2013, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 29, 2013. (Tr. 22) At step two, the ALJ found that Plaintiff has the following severe impairments: fetal alcohol syndrome, attention deficit hyperactivity disorder, oppositional-defiant disorder, and depression with anxiety. (Tr. 22). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with certain mental, and environmental limitations (Tr. 29). Specifically, the ALJ limited Plaintiff:

> to simple, routine, repetitive tasks involving only one to three step instructions, a non-production pace, occasional contact with the public, no intense interaction with supervisors and coworkers, in a setting with no confrontation or brainstorming and dealing with things and not people.

Id. At step four, the ALJ found that transferability of job skills was not relevant because Plaintiff has no past relevant work. (Tr. 35). At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Id. Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 29, 2013 through September 3, 2014, the date of the ALJ's decision. (Tr. 36).

### D. Discussion

#### 1. *Plaintiff's Assignments of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence based on three assignments of error. First, Plaintiff argues that the ALJ's mental RFC assessment was inadequate in that it failed to provide a full function-by-function analysis of the limitations caused by her mental impairments. Second, Plaintiff argues that the ALJ erred by failing to incorporate limitations contained in a medical opinion to which he gave great weight into the RFC. Finally, Plaintiff argues that the ALJ improperly rejected the medical opinion of one of Plaintiff's treating physicians. For the reasons explained herein, the court finds that remand is appropriate based on Plaintiff's first assignment of error.

#### 2. *First Assignment of Error: Mental RFC and Function-by-Function Analysis*

Plaintiff argues that the ALJ failed to comply with the directives of SSR 96-8p in assessing Plaintiff's mental impairments and that the ALJ erred by failing to give a complete function-by-function analysis of her nonexertional mental functions associated with her severe mental impairments of fetal alcohol syndrome, attention deficit hyperactivity disorder, oppositional-defiant disorder, and depression with anxiety. The ALJ found that Plaintiff has the

following degrees of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Tr. 26-28). See 20 C.F.R. § 416.920a(c).

In formulating RFC,[1] the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. Id. at *5. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)….it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. Relevant to the ALJ's finding

---

1 The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). RFC is a statement of the most a person can do in a work setting in light if his impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates a claimant's RFC based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

here that Plaintiff was able to "perform simple, routine, repetitive tasks involving only one to three step instructions [at] a non-production pace…" (Tr. 29), the "basic mental demands of … unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4. See also SSR 96-8P, 1996 WL 374184, at *6 (setting forth work-related mental activities required for competitive work).

Only after a function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7.

The Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) held that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The Circuit declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that

such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id.

Here, despite the ALJ's finding that Plaintiff had the severe mental impairments of fetal alcohol syndrome, attention deficit hyperactivity disorder, oppositional-defiant disorder, and depression with anxiety (Tr. 22), as well as moderate difficulties in activities of daily living, maintaining social functioning and concentration, persistence or pace, (Tr. 26-28), the ALJ did not perform an explicit function-by-function analysis as required by SSR 96-8p. While the ALJ did conduct a thorough analysis of the medical evidence of record and explain his reasoning for the weight given to the various medical opinions and statements of Plaintiff and others regarding daily activities, it is not entirely clear how the evidence aligns with the necessary functions, which is a required showing. See Mascio, 780 F.3d at 636; SSR 96–8p, 1996 WL 374184, at *7.

The ALJ did give substantial weight to the state agency psychological consultants, who both opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions (Tr. 34). They also both opined, however, that Plaintiff's abilities to respond appropriately to changes in the work setting, get along with coworkers or peers without distracting them, and understanding, remembering, and carrying out very short and simple instructions are not significantly limited. (Tr. 34) (citing Exhibits 1A and 3A). The ALJ further gave substantial weight to their findings, as described herein:

> Dr. Fulmer wrote that the claimant was able to understand and remember simple one to three step instructions, that she would have some distractibility and slowed work pace due to mental symptoms but was able maintain attention and concentration for two hour periods over an eight hour day in order to carry out simple tasks at a nonproduction pace, that she could accept instruction from supervisors and interact appropriately with the public and coworkers in a low social setting, that she would be slow to adapt to change but could functions in a stable work assignment and could be aware of hazards, negotiate transportation to work, and plan for simple tasks, and

> that she appeared able to perform simple routine repetitive tasks (Exhibit 1A). Dr. Mayhew concurred with Dr. Fulmer's assessment. He wrote that the claimant's mental allegations were partially credible as she appeared to have some mental limitations but the current medical evidence and activities of daily living did not suggest that here limitations were so severe as to prevent her from performing simple routine repetitive tasks in a low social, low stress setting (Exhibit 3A).

(Tr. 34). In light of the medical evidence to which he gave significant weight, the ALJ found that:

> The claimant's mental impairments and associated moderate limitation in concentration, persistence, and pace prevent her from performing the highly detailed and complex tasks required of "skilled" work but do not prevent her from performing simple routine tasks. She is able to sustain attention and concentration for two hours at a time at a non-production pace. Due to her moderate difficulties in social interaction, she is limited to occasional public contact and no intense interaction with coworkers and supervisors.

(Tr. 34).

As noted above, the ALJ's RFC provided that Plaintiff "is limited to simple, routine, repetitive tasks involving only one to three step instructions, a non-production pace, occasional contact with the public, no intense interaction with supervisors and coworkers, in a setting with no confrontation or brainstorming and dealing with things and not people." (Tr. 29). The ALJ asked the VE if any jobs would be available to a person with such limitations. See (Tr. 85-86). The Fourth Circuit held in Mascio that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit also noted that "the ability to perform simple tasks is different from the ability to stay on task," and that merely limiting a claimant to simple or unskilled work is insufficient.

The Commissioner urges the court to find that the restrictions placed on Plaintiff, including the requirement that she work in a "non-production" environment and the constraints on her social interactions, account for Plaintiff's limitations in concentration, persistence, and pace. Plaintiff argues they do not. Since the Circuit's ruling in Mascio, district courts within this circuit have on several occasions considered whether additional requirements such as those imposed by the ALJ here sufficiently account for a moderate limitation in a claimant's ability to maintain concentration, persistence, and pace. The majority of district courts in North Carolina, including this court, have found that they do not. See, e.g., Scruggs v. Colvin, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence and pace); Weeks v. Colvin, No. 5:14-cv-155-D, 2015 WL 5242927, at *4 (E.D.N.C. Sept. 8, 2015) (holding that a limitation to simple, routine, repetitive tasks with only occasional contact with the general public and few workplace changes did not sufficiently address claimant's limitations in pace); Raynor v. Colvin, No. 5:14–CV–271–BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (remanding where the hypothetical posed to the VE did not pose any limitations related to concentration and persistence other than limiting plaintiff to simple, routine tasks and the ALJ's written decision limited plaintiff to work with simple instructions and work-related decisions as well as no fast-paced production); Salmon v. Colvin, No. 1:12-cv-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a hypothetical limiting claimant to "simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form" did not account for claimant's moderate limitations in

concentration, persistence and pace nor her ability to say on task); Hagerdorn v. Colvin, No. 2:12–cv–29–RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (finding that limitations to simple, routine, and repetitive tasks in a low-production, low-stress work setting, defined as occasional change in job setting or decision making, accounted for claimant's ability to understand, carry out, and remember instructions, respond appropriately to work situations, and deal with changes in a routine work setting, but not for his moderate limitations in concentration); Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *4 (E.D.N.C. Aug. 13, 2015) (finding hypothetical posed to VE limiting claimant to "simple, routine, repetitive tasks [and requiring that claimant] should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations" did not account for claimant's moderate limitations in concentration, persistence, and pace); Leach v. Colvin, No. 4:15-CV-00021-RN, 2016 WL 50722, at *4 (E.D.N.C. Jan. 4, 2016) (holding that RFC limiting claimant to "the use of commonsense understanding to carry out oral, written, and diagrammatic instructions with frequent contact with coworkers and the public" was insufficient to address limitations in concentration, persistence, or pace). But see Linares v. Colvin, No. 5:14–cv–120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing Mascio where ALJ limited claimant to simple, routine, repetitive tasks as well as a stable work environment at nonproduction pace with only occasional public contact, and finding that the nonproduction pace addressed limitations in pace and the stable work environment with only occasional public contact addressed limitation in concentration and persistence). The court finds that here, as in the vast majority of the cases noted above, the limitations provided in the RFC do

not adequately address Plaintiff's moderate limitations in concentration, persistence and pace as required by Mascio.

Plaintiff also correctly notes that the ALJ failed to discuss Plaintiff's ability to stay on task for a full workday. See (Tr. 29-34, 85-86). The Fourth Circuit in Mascio was particularly concerned with the ALJ's failure to discuss the claimant's ability to perform the relevant work-related functions for a full workday. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). See also Newton v. Colvin, No. 3:14–CV–371–RJC–DSC, 2015 WL 4411110, at *3; Scruggs v. Colvin, 2015 WL 2250890 at *4–5 (W.D.N.C. May 12, 2015) (W.D.N.C. July 20, 2015). The Circuit concluded that remand was appropriate in Mascio because the ALJ had determined that the claimant could perform certain functions, but "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence in the record on that point. Id. Because the court was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions," remand was appropriate. Id. Here, the court similarly finds that it is left to guess how the ALJ determined that Plaintiff could perform a full day's work for a full work week. Neither the RFC nor any hypothetical questions posed to the VE address Plaintiff's ability to stay on task. In fact, the ALJ specifically adopted the findings of the state agency psychological consultants, who opined that Plaintiff would be able to sustain attention and concentration for only two hours at a time. See (Tr. 34). It is unclear to the court how a finding that Plaintiff would be able to sustain concentration and attention, i.e. stay on task, for such amount of time translates to a finding that she would be able to successfully do so for a full work week. Because neither the ALJ's RFC nor his hypothetical to the VE addresses Plaintiff's ability to stay on task, and because it is otherwise unclear to the court how the ALJ has

accounted for such ability, remand is appropriate. See Mascio, 780 F.3d at 638; Scruggs, 2015 WL 2250890, at *6; Salmon, 2015 WL 1526020, at *3 (remanding because the ALJ failed to address claimant's ability to stay on task as required by Mascio); Jones, 2015 WL 4773542, at *5 (collecting cases).

In sum, the court finds that an explanation of how Plaintiff's mental limitations affect her ability to perform work-related functions, as well as her ability to perform them for a full workday, to be necessary here. See Mascio, 780 F.3d at 638. The court also finds that because it is left to guess how the ALJ concluded that Plaintiff could perform the relevant functions in light of her severe mental impairments and other limitations in concentration, persistence, and pace, substantial evidence does not support his decision and that remand is therefore appropriate.

### 3. *Remaining Assignments of Error*

The court will not review the remaining assignments of error as it appears that the final determination of the Commissioner does not conform to the requirements of Mascio, resulting in the need for a new hearing.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the

decision of the Commissioner will be remanded for further proceedings consistent with this Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. the decision of the Commissioner, denying the relief sought by Plaintiff, is **REVERSED**;

2. Plaintiff's Motion for Summary Judgment (#9) is **GRANTED**;

3. Defendant's Motion for Summary Judgment (#17) is **DENIED**; and

4. this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: February 29, 2016

Max O. Cogburn Jr.
United States District Judge